**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599
Lee S. Attanasio
Nicholas P. Crowell
Brian J. Lohan

*Counsel for Plaintiff CT Investment Management Co., LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| COZUMEL CARIBE, S.A. de C.V., | : | Case No. 10-13913 (MG) |
| Debtor in a Foreign Proceeding. | : | |
| CT INVESTMENT MANAGEMENT CO., LLC, | : | Adversary Proceeding No. 11-_____ |
| Plaintiff, | : | |
| v. | : | |
| COZUMEL CARIBE, S.A. de C.V., | : | |
| Defendant. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, CT Investment Management Co., LLC ("CTIM" or the "Plaintiff"), by and through its undersigned counsel, hereby files this complaint (the "Complaint") against Cozumel Caribe, S.A. de C.V., the debtor in the above-captioned chapter 15 case ("Cozumel Caribe", "Debtor" or the "Defendant"). The Plaintiff reserves the right to amend this Complaint

to supplement the claims for relief included herein. In support of the requested relief, the Plaintiff alleges, upon knowledge with respect to its own acts, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE[1]

1. This is an adversary proceeding commenced by the Plaintiff pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking a declaratory judgment that certain funds in the Cash Management Account are not property of the Defendant and are not subject to the automatic stay under the Recognition Order, and that CTIM can exercise any of its rights in these funds pursuant to the governing Loan Documents.

2. On July 20, 2010 (the "Petition Date"), the Debtor filed a petition under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") seeking recognition of its insolvency proceeding in Mexico.

3. This Court has original jurisdiction under 28 U.S.C. §§ 1334(b) and 2201(a) because it is a civil proceeding of actual controversy between CTIM and the Defendant arising in or related to the above-captioned chapter 15 proceeding, which is pending in this Court.

4. This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b) and, accordingly, this Court has the power to enter final findings of fact and conclusions of law, subject to review pursuant to 28 U.S.C. § 158.

5. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1409 and 1410.

---

[1] All Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them below.

2

## THE PARTIES

6. Plaintiff CTIM is a Delaware limited liability company with its principal place of business located at 410 Park Avenue, 14th Floor, New York, New York 10022. CTIM is a finance and investment management company focused on the commercial real estate industry.

7. Upon information and belief, Defendant Cozumel Caribe is a Mexican company that provides tourism and hostelry services by and through the Hotel Park Royal Cozumel (the "Hotel"), which is located in Cozumel, Mexico.

8. In addition, certain affiliates of the Defendant – specifically, Comercializadora Y Desarrolladora Ocean, S.A. de C.V.; Consorcio Inmobiliario Cancún, S.A. de C.V.; Desarrolladora Inmobiliaria Del Sur, S.A. de C.V.; Desarrollo Turístico Pirámides Cancún, S.A. de C.V.; Inmobiliaria Cancún Caribe, S.A. de C.V.; Promotora De Inmuebles Del Caribe, S.A. de C.V.; and Servicios Administrativos Etisa, S.A. de C.V (collectively, the "Non-Debtor Affiliates") – own vacation and resort properties throughout Mexico (individually, a "Property" and collectively with the Hotel, the "Properties"). The Properties owned by the Defendant and the Non-Debtor Affiliates generate revenue primarily through guests booking rooms via traditional means such as direct bookings, travel agents, and internet bookings, as well as through guaranteed revenue from leases (the "Leases") with Royal Holiday Club ("Royal"), an affiliate of the Defendant. A list of the properties owned by the Defendant and the Non-Debtor Affiliates is included in the chart below:

3

| Owner | Property/Location |
|---|---|
| Defendant | Cozumel |
| Promotora de Inmuebles del Caribe, S.A. de C.V. | Cancún Pirámides |
| Consorcio Inmobiliario Cancún, S.A. de C.V. | |
| Desarrollo Turístico Pirámides Cancún, S.A. de C.V. | |
| Inmobiliaria Cancún Caribe, S.A. de C.V. | Cancún Caribe |
| Comercializadora Y Desarrolladora Ocean, S.A. de C.V. | Los Cabos |
| Desarrolladora Inmobiliaria del Sur, S.A. de C.V. | Ixtapa |
| Servicios Administrativos Etisa, S.A. de C.V. | Acapulco |

## FACTUAL BACKGROUND

9. On October 3, 2006, the Defendant and the Non-Debtor Affiliates (collectively, the "Borrowers") executed two (2) promissory notes in the aggregate amount of $103 million (the "Promissory Notes") in order to finance the operations of the Hotel Park Royal Cozumel and certain properties owned by the Non-Debtor Affiliates. In connection with the Promissory Notes, the Borrowers, on the one hand, and LaSalle Bank N.A. ("LaSalle" or the "Trustee"), on the other, entered into a note indenture, dated October 3, 2006 (the "Note Indenture") and a cash management agreement, dated October 3, 2006 (the "Cash Management Agreement", and together with the Promissory Notes and the Note Indenture, the "Loan Documents") in the State of New York.[2] As is typical in financings of this type and as more fully described below, the Cash Management Agreement provided that revenues generated by the operations of the Borrowers were to be deposited in certain Cash Management Accounts (as defined below). The obligations of the Borrowers under the Promissory Notes are secured by a

---

[2] Copies of the Note Indenture and the Cash Management Agreement are attached as Exhibits 1 and 2, respectively, to the Declaration of Agustin Garcia Bolanos Cacho, Case No. 10-13913 [Docket No. 4].

4

first priority continuing security interest in and to substantially all assets in the Cash Management Account.

10.     On or about November 1, 2006, the Loan Documents were contributed to a securitization trust, pursuant to a Pooling and Servicing Agreement (the "PSA") by and among Merrill Lynch Mortgage Investors, Inc., as depositor, KeyCorp Real Estate Capital Markets, Inc. ("KeyCorp"), as servicer and special servicer, U.S. Bank National Association, as trustee, and LaSalle, as paying agent and certificate registrar.  Under this arrangement, the financing was pooled with other similar financings and the liabilities were sold to third party investors as commercial mortgage-backed securities.  KeyCorp hired Wells Fargo Bank, N.A. ("Wells") to act as sub-servicer on its behalf with responsibility for the day-to-day administration of the financing, including enforcing the consent rights of the Trustee and interfacing primarily with the Borrowers.  On or about July 3, 2009, CTIM assumed the responsibilities of KeyCorp, as special servicer, with responsibility to address material issues that arose with respect to the financing and to deal with any enforcement actions that might become necessary.

**A. Description of the Cash Management System**

11.     Pursuant to the Cash Management Agreement and the Note Indenture, the Borrowers entered into two (2) lockbox arrangements which established: a peso lockbox for rents collected in pesos and all over-the-counter rents generated from each Property (the "Peso Lockbox Account"); and a dollar lockbox account for rents generated from the Properties (other than over-the-counter rents), in any currency other than pesos (the "Dollar Lockbox Account").  Each hotel would deposit its non-peso denominated revenues into a one of several Dollar Lockbox Accounts.  The following chart identifies the specific Dollar Lockbox Account into which each hotel would deposit its non-peso denominated revenues.

5

| Property | Account Name | Dollar Lockbox Account Number | ABA Number |
|---|---|---|---|
| Cozumel | Cozumel Caribe, S.A. de C.V. Lockbox Account | 724124.1 | 071-000-505 |
| Cancún Pirámides | Desarrollo Turístico Pirámides Cancún, S.A. de C.V., Promotora de Inmuebles del Caribe, S.A. de C.V., Consorcio Inmobiliario Cancún, S.A. de C.V. Lockbox Account | 724123.1 | 071-000-505 |
| Cancún Caribe | Inmobiliaria Cancún Caribe, S.A. de C.V. Lockbox Account | 724108.1 | 071-000-505 |
| Los Cabos | Comercializadora Y Desarrolladora Ocean, S.A. de C.V. Lockbox Account | 714125.1 | 071-000-505 |
| Ixtapa | Desarrolladora Inmobiliaria del Sur, S.A. de C.V. Lockbox Account | 724127.1 | 071-000-505 |
| Acapulco | Administrativos Etisa, S.A. de C.V. Lockbox Account | 724126.1 | 071-000-505 |

12. Funds in the Dollar Lockbox Accounts subsequently were swept daily into a centralized account (the "Cash Management Account"), and disbursed or applied pursuant to the terms of the Cash Management Agreement. Funds swept into the Cash Management Account were applied to one or more subaccounts, including the: (i) Tax and Insurance Escrow Subaccount; (ii) Fees Subaccount; (iii) Debt Service Subaccount; (iv) Replacement Reserve Subaccount; (v) BI Insurance Reserve Subaccount; (vi) Extraordinary Expense Subaccount; (vii) Issuers Remainder Subaccount; (viii) Excess Cash Flow Subaccount; and (ix) Alterations

6

Subaccount. Further, Article 10 of the Note Indenture established additional reserve accounts (collectively with the subaccounts, the "<u>Reserve Accounts</u>").

13. Therefore, U.S. dollar-denominated revenues generated by each Borrowers' Property were swept to a centralized Cash Management Account, applied to various Reserve Accounts and pooled with the funds of the other Borrowers (including the Debtor), but not comingled with the funds of the Trustee or CTIM. Thus, the Cash Management Account and Reserve Accounts (other than the Performance Holdback, BI Holdback and Political Risk Holdback accounts, as discussed below) would contain funds generated by and/or belonging to both the Defendant and the Non-Debtor Affiliates.

14. Assuming sufficient funds were on deposit in the Cash Management Account to pay certain fees, fund certain reserve and deposit accounts and meet monthly debt service obligations, and no event of default or Trigger Event (as defined in the Cash Management Agreement) had occurred, funds on deposit in the Peso Lockbox Account were transferred daily to one or more accounts of the Borrowers for the payment of approved operating expenses. Following a Trigger Event, however, the Borrowers were only entitled to transfer an amount equal to the monthly approved operating expenses (as set forth in an approved budget) from the Peso Lockbox Account and all other amounts would be transferred from the Peso Lockbox Account to the Cash Management Account (and then ultimately to the Excess Cash Flow Account (as defined below)).

15. Under the Cash Management Agreement, a Trigger Event occurs when, among other things, the Borrowers fail to meet certain financial tests, including a debt yield test and a debt service coverage ratio test. Upon the occurrence of a Trigger Event, all funds on deposit in the Dollar Lockbox Accounts and Peso Lockbox Accounts are swept into the Cash

7

Management Account and then ultimately held in the "Excess Cash Flow Subaccount" (the "Excess Cash Flow Account"). As a result of the failure of the Borrowers to meet the required financial tests, a Trigger Event occurred in the fall of 2007 and a "cash sweep" of the funds on deposit in the Dollar Lockbox Accounts and Peso Lockbox Accounts commenced on October 12, 2007 and remained in effect as of the Petition Date.

16.   Thus, subsequent to the Trigger Event, excess funds in the Peso Lockbox Account and Dollar Lockbox Account from both the Defendant and Non-Debtor Affiliates were deposited in the Cash Management Account and ultimately swept into the Excess Cash Flow Account.

### B. The Mexican and Chapter 15 Proceedings

17.   On May 21, 2010, Nemias Esteban Martinez Martinez (the "Foreign Representative") filed a petition to obtain a "business reorganization judgment" authorizing the commencement of a Concurso Mercantil Proceeding (the "Concurso Petition") in the Third District Court for the State of Quintana Roo (the "Mexican Court"). The Mexican Court entered an initial *ex parte* order staying any action against the Defendant and its assets in both the United States and Mexico on May 27, 2010 (the "Mexican Order"). CTIM received no notice of the filing of the Concurso Petition or of the Mexican Order until reference to both were made in a letter received by CTIM nearly a month later. To CTIM's knowledge, as of the date of this Complaint, none of the Non-Debtor Affiliates has commenced insolvency or related proceedings in Mexico or the United States.[3]

---

[3] In the Decision of the Second Collegiate Court of the Twenty-Seventh Circuit denying CTIM's appeal of the Mexican Order, the appellate court noted that

> "… the provisional measures refer <u>exclusively to the funds obtained from the current operation of "Cozumel Caribe"</u>, Sociedad Anonima de Capital Variable, <u>but not of the affiliates, which are not subject to bankruptcy</u>, and that they may

8

18. On July 20, 2010, the Foreign Representative sought *ex parte* relief via the *Ex Parte* Application of Foreign Representative for Entry of Provisional Relief Pursuant to 11 U.S.C. § 1519, and the Court entered an Order to Show Cause and granted Applicant preliminary injunctive relief on July 21, 2010 (the "Preliminary Injunction") [Docket No. 11]. The Preliminary Injunction, as modified, was extended by the Order Granting Provisional Relief (the "Initial Order") on August 4, 2010 [Docket No. 23]. The August 4th Order prohibited any party from transferring the cash in the Cash Management Account outside of the U.S. Initial Order at ¶ 1a.

19. On September 30, 2010, the Mexican Court issued its "business reorganization judgment" granting the Concurso Petition permitting the Defendant to proceed with the "reconciliation" stage of its Concurso Mercantil Proceeding.

20. On October 20, 2010, this Court entered an agreed Order Granting Recognition of Foreign Representative and Foreign Main Proceeding and for Additional Relief Under 11 U.S.C. § 1521 (the "Recognition Order") [Docket No. 45]. The Recognition Order prohibits any party from transferring the cash in the Cash Management Account outside of the U.S. without further order from this Court. Recognition Order at ¶ 3. The consensual terms of the Recognition Order were intended to preserve the status quo during the Debtor's reorganization under Mexican law, thereby providing CTIM with some measure of adequate protection as to its cash collateral.[4] This Court expressly indicated that certain funds in the Cash

---

obtain from the activities arising from their corporate objective." (emphasis added)

Supplemental Declaration of Alfonso Peniche Garcia in Support of Application under Chapter 15 of the Bankruptcy Code for Recognition of Foreign Representative and Foreign Main Proceeding and for Additional Relief Pursuant to 11 U.S.C. § 1521 [Docket No. 39], Exhibit G, p.9.

[4] Mr. Gleit: Yes, Your Honor. I believe the point of the proceedings in the U.S. is to maintain the status quo. (Hr'g Transcript, August 3, 2010, 15:15-16);

9

Management Account may not belong to the Defendant and that CTIM reserved "its right to dispute Cozumel Caribe's ownership interest in the assets subject to" the Recognition Order. *Id.* at ¶ 8.[5]

### C. Funds in the Dollars Lockbox Accounts, Peso Lockbox Accounts and Cash Management Account

21. The following chart summarizes the deposits, by depositor, into the Cash Management Account from the Dollar Lockbox Account since December 1, 2006.

| Depositor | Deposits since December 1, 2006 | Percent of Cash Management Account |
|---|---|---|
| ***Debtor*** | | |
| Cozumel Caribe, S.A. de C.V. (Debtor) | 9,873,300 USD | 29.9 % |
| ***Non-Debtor Affiliates*** | | |
| Desarrollo Turístico Pirámides Cancún, S.A. de C.V., Promotora de Inmuebles del Caribe, S.A. de C.V., Consorcio Inmobiliario Cancún, S.A. de C.V. | 9,987,642 USD | 30.3 % |
| Inmobiliaria Cancún Caribe, | 7,808,251 USD | 23.7 % |

---

Ms. Attanasio: … Counsel proposed a modified and more narrow order, and one which CTIM is willing to consent to really for the limited purpose of ensuring that there's no disposition of funds that are currently held in the United States (Hr'g Transcript, August 3, 2010, 19:8-12);

Ms. Attanasio: … I think the purpose of today's order, and our willingness to consent to the scope of today's order is really to simply maintain the funds in that account, preserve the status quo and try and sort some of the more complex issues out as we move forward. (Hr'g Transcript, August 3, 2010, 23:24-25; 24:1-3).

[5] This Court expressed concern throughout the August 3, 2010 hearing that it would be enjoining creditors from reaching funds in the Cash Management Account that do not belong to the Debtor:

The Court: Okay. So my question is I don't know how I grant injunctive relief enjoining anyone from reaching funds that don't belong to the debtor. (Hr'g Transcript, August 3, 2010, 8:17-19);

The Court: I want to know what my authority is to enter an injunction preventing anyone from seeking relief relating to property of nondebtors? (Hr'g Transcript, August 3, 2010, 10:11-13);

The Court: …. I want to make clear on the record that if any other party comes forward because they believe that funds belonging to a nondebtor should not properly be subject to an order, I'll certainly hear that on shortened notice. (Hr'g Transcript, August 3, 2010, 16:24-25, 17:1-2);

| | | |
|---|---|---|
| S.A. de C.V. | | |
| Comercializadora Y Desarrolladora Ocean, S.A. de C.V. | 290,624 USD | 0.9 % |
| Desarrolladora Inmobiliaria del Sur, S.A. de C.V. | 2,318,368 USD | 7.0 % |
| Servicios Administrativos Etisa, S.A. de C.V. | 2,700,358 USD | 8.2 % |
| **Debtor Deposit Total** | **9,873,300 USD** | 29.9 % |
| **Non-Debtor Affiliate Deposit Total** | **23,105,242 USD** | 70.1 % |
| **CASH MANAGEMENT ACCOUNT TOTAL** | **32,978,542 USD** | |

22.  The chart below illustrates the amount of pesos deposited into each Peso Lockbox Account, by depositor, for the period from January 1, 2008 through December 31, 2009. As described above, during a Trigger Event, after approved operating expenses were paid from the Peso Lockbox Accounts, excess funds on deposit in the Peso Lockbox Accounts were swept into the Cash Management Account (and ultimately swept into the Excess Cash Flow Account) on a monthly basis.

| Depositor | Deposits from January 1, 2008 Thru December 31, 2009 | Percent of Peso Lockbox Accounts |
|---|---|---|
| ***Debtor*** | | |
| Cozumel Caribe, S.A. de C.V. | 238,440,859 MXN | 12.2 % |
| ***Non-Debtor Affiliates*** | | |
| Desarrollo Turístico Pirámides Cancún, S.A. de C.V., Promotora de Inmuebles del Caribe, S.A. de C.V., Consorcio Inmobiliario Cancún, S.A. de C.V. | 564,697,184 MXN | 28.8 % |
| Inmobiliaria Cancún Caribe, S.A. de C.V. | 343,638,541 MXN | 17.5% |
| Comercializadora Y Desarrolladora Ocean, S.A. de | 49,832,654 MXN | 2.5 % |

11

| | | |
|---|---|---|
| C.V. | | |
| Desarrolladora Inmobiliaria del Sur, S.A. de C.V. | 440,512,776 MXN | 22.5 % |
| Servicios Administrativos Etisa, S.A. de C.V. | 322,951,607 MXN | 16.5% |
| **Debtor Fund Total** | **238,440,859 MXN** | 12.2 % |
| **Non-Debtor Funds' Total** | **1,721,635,764 MXN** | 87.8 % |
| **PESO ACCOUNT TOTAL** | **1,960,076,623 MXN** | |

23. Below is a summary of all amounts held in the United States as of December 9, 2011, broken down by the various Reserve Account balances:

| **Account Description** | **Balance** |
|---|---|
| Tax Escrow | $184,374.00 |
| Property Insurance Escrow | $645,669.33 |
| Suspense Account[6] | $850,657.44 |
| Replacement Reserve | $300,986.42 |
| Deferred Maintenance Reserve | $151.51 |
| Hyatt Construction | $1,392.85 |
| Performance Holdback | $3,205,063.01 |
| BI Holdback | $2,087,320.10 |
| Political Risk Holdback | $15,146.36 |
| Cosumel Construction | $186.26 |
| Ixtapa Construction | $54.66 |
| Excess Cash Reserve | $1,201,730.81 |

---

[6] Funds in the Suspense Account were swept from Cash Management Account in June and July 2010 but have not been applied to a Subaccount or Reserve.

24. Consequently, the Excess Cash Flow Account as well as the various other Reserve Accounts contain funds that were derived from and/or related to the operations of the Non-Debtor Affiliates[7] (the "Non-Debtor Funds").

### D. Breach of the Cash Management Agreement

25. Subsequent to the Debtor commencing bankruptcy proceedings in Mexico, all Borrowers began diverting operating revenues required to be deposited in the Dollar Lockbox Accounts and various Reserve Accounts to their own accounts in Mexico in violation of the terms of the Cash Management Agreement. In addition, since the Petition Date, CTIM has been unable to apply funds on deposit in certain Reserve accounts for their intended purpose (e.g., insurance, tax, etc.). This is particularly troubling where, upon information and belief, the Borrowers have ignored their insurance maintenance obligations under the Loan Documents by failing to name CTIM as an insured party on the current insurance policies. Moreover, since the commencement of the bankruptcy proceedings, the Borrowers have not provided any financial or other information regarding their operations or Properties despite a clear obligation under the various Loan Documents to provide such information.

### COUNT I

### Request for Declaratory Judgment that the Non-Debtor Funds Are Not Property of the Debtor Pursuant to 11 U.S.C. § 1520

26. CTIM repeats and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them into this Count as if fully set forth herein.

27. As reserved under the Recognition Order, CTIM has the right to dispute the Debtor's ownership interest in the assets in the Excess Cash Flow Account and other Reserve Accounts. Recognition Order at ¶ 8.

---

[7] The Performance Holdback and Political Risk accounts were funded at the closing of the financing through a holdback of the financing proceeds.

13

28. The Excess Cash Flow Account and other Reserve Accounts contain Non-Debtor Funds in an amount to be proven at trial.

29. The Non-Debtor Funds are not, and never were, property of the Defendant under Section 1520 of the Bankruptcy Code.[8]

30. Accordingly, the Plaintiff seeks a declaratory judgment that the Non-Debtor Funds are not property of the Defendant pursuant to 11 U.S.C. § 1520.

31. There is an actual, substantial and immediate controversy between the Plaintiff and the Defendant within the meaning of 28 U.S.C. § 2201 regarding whether the Non-Debtor Funds are, or ever were, property of the Debtor under § 1520 of the Bankruptcy Code.

32. The declaratory relief requested is urgently required because the resolution of this adversary proceeding will clarify and resolve the relative rights and obligations as between CTIM and the Defendant with respect to funds held in the United States and the proper scope of the stay provided in the Recognition Order.

## COUNT II

### Request for Declaratory Judgment that Non-Debtor Funds Are Not Subject to the Automatic Stay Granted in the Recognition Order and that Plaintiff Can Exercise Any of Its Rights in the Non-Debtor Funds Pursuant to the Loan Documents

33. CTIM repeats and realleges the allegations set forth in paragraphs 1 through 32 above and incorporates them into this Count as if fully set forth herein.

34. The Non-Debtor Funds are not subject to the automatic stay granted in the Recognition Order because the Non-Debtor Funds in the Excess Cash Flow Account and other Reserve Accounts are not property of the Debtor and, pursuant to Sections 1520 and 1521 of the

---

[8] The Defendant has acknowledged that not all of the cash in the Cash Management Accounts is property of the Defendant.

Mr. Gleit: It is the funds of Cozumel Caribe, whose a debtor, and it's the funds of six hotels that are nondebtors, who are parties to the same 103 million dollar facility. (Hr'g Transcript, August 3, 2010, 10:6-8).

Bankruptcy Code, the stay provided under the Recognition Order only applies to property of the Defendant. *See* Recognition Order at ¶ 3.

35. Because the Non-Debtor Funds are not subject to the automatic stay and in order to protect the interests of creditors such as CTIM and the holders of the Promissory Notes (the "Noteholders") as required under Section 1522 of the Bankruptcy Code, CTIM can exercise any of its rights in the Non-Debtor Funds pursuant to the Loan Documents for the benefit of the Noteholders.

36. Accordingly, the Plaintiff seeks a declaratory judgment that the Non-Debtor Funds are not subject to the automatic stay granted in the Recognition Order and that the Plaintiff can exercise any of its rights in the Non-Debtor Funds pursuant to the Loan Documents or other applicable law.

37. There is an actual, substantial and immediate controversy between the Plaintiff and the Defendant within the meaning of 28 U.S.C. § 2201 regarding whether the Non-Debtor Funds are subject to Recognition Order.

38. The declaratory relief requested is urgently required because the resolution of this adversary proceeding will clarify and resolve the relative rights and obligations as between CTIM and the Defendant with respect to the funds held in the United States and the proper scope of the stay provided in the Recognition Order.

**PRAYER FOR RELIEF**

WHEREFORE, by this Complaint the Plaintiff prays for the following relief, pursuant to the Federal Declaratory Judgment Act (28 U.S.C. § 2201, *et seq.*) and Sections 1520 and 1522 of the Bankruptcy Code, entry of an Order by the Court, declaring that:

(a) the Non-Debtor Funds are not property of the Debtor pursuant to Section 1520 of the Bankruptcy Code;

15

     (b)  the Non-Debtor Funds are not subject to the automatic stay granted in the Recognition Order;

     (c)  the Plaintiff can exercise any of its rights in the Non-Debtor Funds pursuant to the Loan Documents; and

     (d)  an order granting the Plaintiff such other and further relief as this Court deems just, proper, fair and equitable under the circumstances.

Dated: New York, New York
December 20, 2011

          SIDLEY AUSTIN LLP

     By:  /s/ Lee S. Attanasio
        Lee S. Attanasio
        Nicholas P. Crowell
        Brian J. Lohan

        787 Seventh Avenue
        New York, New York  10019
        Tel: (212) 839-5300
        Fax: (212) 839-5599
        lattanasio@sidley.com
        ncrowell@sidley.com
        blohan@sidley.com

        *Counsel to Plaintiff*

16