JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Pedro A. Jimenez
Jennifer J. O'Neil

JONES DAY
325 John J. McConnell Boulevard
Suite 600
Columbus, Ohio  43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198
Todd Swatsler

*Attorneys for the Foreign Representative Nemias Esteban Martinez Martinez*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
|  |  |
|---|---|
| In re | : |
| | : |
| COZUMEL CARIBE, S.A. de C.V., | : |
| | : |
| Debtor in a Foreign Proceeding | : |

|  |  |
|---|---|
| : | Chapter 15 |
| : | |
| : | Case No. 10-13913 (MG) |
| : | |
| : | |

---------------------------------------------------------------x
| CT INVESTMENT MANAGEMENT CO., LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| COZUMEL CARIBE, S.A. de C.V., | : |
| | : |
| Defendant. | : |

| : | |
| : | |
| : | |
| : | Adversary Proceeding No. 11-02936 |
| : | (MG) |

---------------------------------------------------------------x

<u>**MOTION FOR ENTRY OF ORDER**</u>
<u>**EXTENDING COMITY AND STAYING PROCEEDINGS**</u>

Nemias Esteban Martinez Martinez (the "<u>Foreign Representative</u>"), in his capacity as the

duly recognized foreign representative in the above-captioned chapter 15 proceeding of Cozumel

Caribe, S.A. de C.V. ("<u>Cozumel Caribe</u>"), whose bankruptcy proceeding pursuant to the

provisions of the *Ley de Concursos Mercantiles* (the "Mexican Business Reorganization Act") is currently pending before the Third District Court for the State of Quintana Roo (the "Mexican District Court"), hereby moves pursuant to section 1509(b) of title 11 of the United States Code (the "Bankruptcy Code") for an order staying all proceedings relating to the Complaint for Declaratory Judgment (the "Complaint") (Docket No. 1) filed by Plaintiff CT Investment Management Co., LLC ("CT Investment") on the grounds of international comity.  In support of this Motion, the Foreign Representative respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PRELIMINARY STATEMENT

2.      The Complaint is the most recent attempt by CT Investment to work an end run around the Mexican District Court and Cozumel Caribe's bankruptcy proceeding in Mexico. Having vigorously litigated in that case and dissatisfied with the results, CT Investment has ceased pressing its interests there.  Instead, CT Investment has turned to the courts in this country in a transparent attempt to avoid adverse rulings from the Mexican District Court (and Mexican appellate courts), and to otherwise circumvent the Mexican District Court's administration of Cozumel Caribe's bankruptcy.

3.      As is discussed in detail below, at the heart of CT Investment's dissatisfaction are the terms of the Mexican District Court's initial "precautionary measures" order in the Mexican Bankruptcy Proceeding (defined below).  That order, entered on May 27, 2010 (the "May 27th Order"), granted certain protections the Mexican District Court deemed necessary to the

reorganization of Cozumel Caribe.  Those protections included staying:  (1) any actions seeking

to transfer, or to apply against any outstanding indebtedness, funds in the Dollars Lockbox

Account; and (2) any actions to enforce a guaranty agreement (the "Guaranty Agreement") that

had been entered into by Cozumel Caribe's parent company, Grupo Costamex, S.A. de C.V.

("Grupo Costamex"), and by its ultimate owner, Pablo Gonzalez Carbonell ("Carbonell"),

relating to a $103 million USD loan that had been made to Cozumel Caribe and several of its

affiliates.

4.      CT Investment strenuously litigated the terms of the May 27th Order, claiming

that its protections were too broad.  Indeed, two different appellate courts heard CT Investment's

objections, but each found the protections set forth in the May 27th Order appropriate.  Having

failed to achieve success in Mexico, CT Investment has now turned to the U.S.

courts ─ engaging in precisely the sort of gamesmanship that this Court and the Second Circuit

have repeatedly rebuked.  See Transcript of May 19, 2011 Hearing at 6 (Bankr. No. 10-13913);

In re Atlas Shipping A/S, 404 B.R. 726, 745 (Bankr. S.D.N.Y. 2009); JP Morgan Chase Bank v.

Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 427 (2d Cir 2005); Finanz AG Zurich v.

Banco Economico S.A., 192 F.3d 240, 246-47 (2d Cir. 1999); Allstate Life Ins. Co. v. Linter

Group Ltd., 994 F.2d 996, 999-1000 (2d Cir. 1993); Victrix S.S. Co., S.A. v. Salen Dry Cargo

A.B., 825 F.2d 709, 713-14 (2d Cir. 1987).

5.      Fortunately, one court has already seen through CT Investment's misguided

scheme, recently granting the Foreign Representative's motion to stay a case that was brought in

direct violation of the May 27th Order.  On January 11, 2012, Judge Sweet of the United States

District Court for the Southern District of New York ruled that an action filed in that court by

CT Investment against Grupo Costamex and Carbonell to enforce the Guaranty Agreement

- 3 -

should be stayed on grounds of international comity.  See CT Investment Management Co., LLC v. Carbonell, 2012 WL 92359 (S.D.N.Y. Jan. 11, 2012) (slip opinion attached hereto as Exhibit B).

6.       Judge Sweet noted that, pursuant to 11 U.S.C. § 1509(b)(3), once a foreign proceeding has been granted recognition under chapter 15 "it is mandatory that U.S. courts extend comity to a foreign representative's request for a grant of comity unless granting such request would contravene U.S. public policy."  CT Investment Management Co., LLC v. Carbonell, 2012 WL 92359 at *4.  After reviewing in detail the May 27th Order, Judge Sweet held that "comity must be extended because the May 27th Order is not manifestly contrary to public policy of the United States."  Id. at *5.

7.       So it is here.  The Dollars Lockbox Account is expressly subject to the protections issued by the Mexican District Court in the May 27th Order.  Indeed, in letters rogatory issued by the Mexican District Court on April 12, 2011, it expressly requested that the stay provisions of the May 27th Order be respected by this Court.

8.       If granted, the relief CT Investment is seeking would allow it to proceed against the Dollars Lockbox Account in direct violation of the May 27th Order.  Because the May 27th Order in no way contravenes U.S. public policy, however, it is entitled to comity.  This action must, therefore, be stayed.

## **BACKGROUND**

### **Cozumel Caribe And Its Affiliates**

9.       Cozumel Caribe is a Mexican company that provides hostelry and tourism services in Mexico.  Cozumel Caribe, together with its seven non-debtor affiliates, also

organized under the laws of the United States of Mexico[1] (referred to, along with Cozumel

Caribe, as the "Companies"), operate a number of luxury hotels in Mexico, including the Hotel

Park Royal Cozumel (the "Hotel"), which is located in Cozumel, Mexico.  While each of the

Companies owns and operates its own resort property, the properties collectively are part of and

offered as a timeshare arrangement to prospective timeshare owners, enhancing the value of any

one property since the customer participating in the timeshare arrangement is presented with all

properties as a destination option, including the Hotel, and may choose from any property

operated by any of the Companies.  In other words, the viability and success of the timeshare

arrangement in which Cozumel Caribe participates depends on the ongoing appeal of all

properties operated by the Companies.  See Declaration of Raul Garcia Herrera (the "Herrera

Declaration") at ¶ 4 (the Herrera Declaration is being filed contemporaneously herewith).

**The Dollars Lockbox Account**

10.     On October 3, 2006, Cozumel Caribe, along with the other Companies, as issuers,

and Lasalle Bank National Association ("Lasalle"), as trustee, executed a note indenture

(the "Indenture"), pursuant to which the Companies issued two promissory notes (the "Notes") in

the aggregate amount of $103 million USD.  The Companies are jointly and severally liable for

repayment of the Notes.

11.     In connection with the Indenture, the Companies and Lasalle executed a cash

management agreement, dated October 3, 2006 (the "Cash Management Agreement," and

together with the Indenture and the Notes, the "Loan Documents").  Pursuant to section 2.1(a) of

the Cash Management Agreement and section 2.4(a) of the Notes, the Companies established

---

[1]     The seven non-debtor affiliates are Promotora de Inmuebles del Caribe, S.A. de C.V.; Consorcio
Imnobiliario Cancun, S.A. de C.V.; Desarrollo Turistico Piramides Cancun, S.A. de C.V.; Imnobiliaria
Cancun Caribe, S.A. de C.V.; Comercializadora Y Desarro Lladora Ocean, S.A. de C.V.; Desarrolladora
Imnobiliariadel Sur, S.A. de. C.V.; and Servicios Administrativos Etisa, S.A. de C.V.

(i) one account with Lasalle into which all Dollar-denominated rents from all properties were deposited on a daily basis (the "Dollars Lockbox Account") and (ii) one account with Institucion de Banca Multiple into which all Pesos-denominated rents and over-the-counter rents from all properties were deposited on a daily basis (the "Pesos Lockbox Account").[2]

12.    Upon information and belief, there is currently approximately $8-9 million USD in the Dollars Lockbox Account.[3]  That total represents funds that have been deposited and commingled relating to the operations of the Companies.[4]

**The Mexican Bankruptcy Proceeding And CT Investment's Challenges To The May 27th Order**

13.    On April 27, 2010, Cozumel Caribe initiated a voluntary insolvency proceeding (the "Mexican Bankruptcy Proceeding") pursuant to the provisions of the Mexican Business Reorganization Act by submitting a petition to the Mexican District Court.

14.    As part of its petition under the Mexican Business Reorganization Act, Cozumel Caribe sought certain preventive measures to protect Cozumel Caribe, as well as several related third parties, as Cozumel Caribe pursued reorganization.  On May 27, 2010, the Mexican District Court approved Cozumel Caribe's application and entered an order that, among other things, provided a stay during the pendency of the Mexican Bankruptcy Proceeding of any actions

---

[2]    Additional details concerning the Notes, the Indenture, or regarding the operation of the Dollars Lockbox Account and the Pesos Lockbox Account are set forth in the Declaration of Agustin Garcia Bolanos Cacho. See Bankr. Case No. 10-13913 (Docket No. 4).

[3]    As explained in the Complaint, on or about July 3, 2009, CT Investment assumed the responsibilities of special servicer with respect to a securitization trust comprised of the Loan Documents.  Complaint at ¶ 10.

[4]    As this Court is aware, on July 28, 2011, the Foreign Representative withdrew without prejudice his Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 1507 and 1521 Directing Turnover of Assets (Docket No. 49) in order to have certain issues of Mexican law raised by CT Investment in its objection to that motion addressed by the Mexican District Court.  As represented to this Court in that certain letter dated July 29, 2011, the Foreign Representative asked the Mexican District Court to decide a number of issues, including, importantly, whether under Mexican law, certain taxes collected by the Companies on behalf of the Mexican Government and currently held in the Dollars Lockbox Account are owned by the Companies or the Mexican Government.  Just recently, the Mexican District Court decided those issues.

(1) seeking to transfer, or to apply against any outstanding indebtedness, funds in to the Dollars

Lockbox Account, and (2) to enforce the Guaranty Agreement. <u>See</u> Herrera Declaration at ¶ 6-8.

That relief was granted only after the Mexican District Court determined that it was necessary in

light of the nature of Cozumel Caribe's business, and the manner in which that business was

intertwined and integrated with the businesses of the other Companies. <u>Id.</u> at ¶ 7.

15.     The Director General of Mexico's Federal Institute of Business Reorganization

Specialists appointed the Foreign Representative as the *visitador* of Cozumel Caribe on June 22,

2010.  That appointment was later elevated to the title of *conciliador* by the Mexican District

Court in connection with the granting of Cozumel Caribe's petition pursuant to the Mexican

Business Reorganization Act.[5]

16.     In the course of the Mexican Bankruptcy Proceeding, CT Investment was

scheduled as a secured creditor in the amount of $103 million USD, reflecting the total amount

due on the Notes.  <u>Id.</u> at ¶ 5, n. 4.

17.     On August 12, 2010, CT Investment challenged parts of the May 27th Order by

filing a claim with the Second District Court of the City of Cancun (a Mexican federal court, but

not the Mexican District Court presiding over the Mexican Bankruptcy Proceeding)

(the "<u>Cancun District Court</u>") for *amparo*, a proceeding available to parties seeking redress for

alleged constitutional violations (the "<u>Amparo Action</u>").  In connection with the Amparo Action,

CT Investment filed an ex parte request for a temporary and immediate suspension of the May

27th Order (the "<u>Provisional Suspension Request</u>"), as well as a separate request for a temporary

---

[5]     Pursuant to the Mexican Business Reorganization Act, the *conciliador* is vested with authority to, among other things, oversee negotiations between the debtor and its creditors and propose a plan of reorganization. The *conciliador* is empowered to monitor the accounting and any transactions carried out by the debtor and can assume or reject executory contracts, incur additional debt and sell assets outside the regular course of business.  The *conciliador* is also authorized to seek approval from the Mexican District Court to remove and replace the management of the debtor.  Finally the *conciliador* has the authority to act in a foreign State on behalf of the debtor, to the extent permitted by applicable foreign law.

suspension of the May 27th Order pending the outcome of the Amparo Action (the "Definitive Suspension Request").  See Herrera Declaration at ¶ 11.

18.    On August 13, 2010, the Cancun District Court denied the ex parte Provisional Suspension Request based on CT Investment's failure to demonstrate that it would suffer any harm in the absence of an immediate suspension of the May 27th Order.  See Herrera Declaration at ¶ 12.

19.    In response to the August 13, 2010 denial of the Provisional Suspension Request, CT Investment filed an ex parte appeal with the Second Associate Court of the Twenty-Seventh Circuit in Mexico (the "Mexican Appellate Court"), seeking review of the Cancun District Court's denial.  The Mexican Appellate Court denied the ex parte request on the same grounds as the Cancun District Court.  See Herrera Declaration at ¶ 13.

20.    Following the denial by the Mexican Appellate Court, the Cancun District Court held a hearing on August 31, 2010 to consider CT Investment's Definitive Suspension Request. On September 7, 2010, the Cancun District Court denied the Definitive Suspension Request on the grounds that (i) the May 27th Order was intended to protect Cozumel Caribe and its related entities because the businesses of Cozumel Caribe and its affiliates were "closely related" under the Mexican Business Reorganization Act; and (ii) a suspension of the May 27th Order would violate Mexican public policy.  See Herrera Declaration at ¶ 14.

21.    On September 30, 2010, the Mexican District Court issued its business reorganization judgment granting Cozumel Caribe's bankruptcy petition and permitting it to proceed with the reconciliation stage in the Mexican Bankruptcy Proceeding.  See Herrera Declaration at ¶ 5.

NYI-4423270v4

22.      On December 9, 2010, the Mexican Appellate Court dismissed the Amparo Action (the "Amparo Judgment").  The Amparo Judgment rendered the May 27th Order, as entered on May 27, 2010 by the Mexican District Court, final and binding on all parties, and not susceptible to appeal.  See Herrera Declaration at ¶ 16.

23.      On April 12, 2011, at the request of the Foreign Representative, the Mexican District Court ordered the issuance of letters rogatory to inform this Court and the District Court for the Southern District of New York of the ongoing effectiveness of the May 27th Order, reiterating the May 27th Order's specific grant of precautionary measures, including its prohibition against any effort to apply funds in the Dollars Lockbox Account to any outstanding indebtedness under the Loan Documents.  See Herrera Declaration at ¶ 18.

**The Chapter 15 Case And Recognition Of The Mexican Bankruptcy Proceeding**

24.      On July 20, 2010, the Foreign Representative filed a petition under chapter 15 of Bankruptcy Code on behalf of Cozumel Caribe with this Court.

25.      This Court entered its Order Granting Recognition of Foreign Representative and Foreign Main Proceeding and for Additional Relief under 11 U.S.C. § 1521 (the "Recognition Order") on October 20, 2010.  In the Recognition Order, this Court specifically directed that "the *Concurso Mercantil* Proceeding shall be given its full force and effect."  Recognition Order at ¶ 3.

**CT Investment's District Court Action**

26.      Acting in direct violation of the terms of the May 27th Order, on September 13, 2010, CT Investment filed a complaint against Grupo Costamex and Carbonell in the United States District Court for the Southern District of New York (Case No. 10-06872 (RWS)), seeking to enforce the Guaranty Agreement (the "District Court Action").

- 9 -

27.     The Foreign Representative subsequently filed a motion for an order extending comity to the May 27th Order and staying the District Court Action (District Court Action Docket Nos. 18, 19, 20).

28.     On January 11, 2012, Judge Sweet granted the Foreign Representative's Motion, ordering that comity be extended to the May 27th Order and staying the District Court Action pending the conclusion of the Mexican Bankruptcy Proceeding (District Court Action Docket No. 32; 2012 WL 92359) (the "District Court Comity Decision").

**CT Investment's Adversary Proceeding**

29.     Notwithstanding the unambiguous provisions of the May 27th Order staying any actions relating to the Dollars Lockbox Account, CT Investment commenced this Adversary Proceeding on December 22, 2011.  CT Investment seeks a declaration that certain funds in the Dollars Lockbox Account do not belong to Cozumel Caribe, and that CT Investment can exercise any of its rights with respect to non-debtor funds pursuant to the Loan Documents.  If this Court grants the relief requested, CT Investment will have successfully circumvented the May 27th Order and undermined measures the Mexican District Court expressly determined were necessary to protect Cozumel Caribe and the other Companies.

## ARGUMENT

**A.     Extension Of Comity Under Chapter 15 Is Mandatory Unless It Would
Contravene U.S. Policy**

30.     The plain text of chapter 15 specifically contemplates that, once recognition has been granted pursuant to section 1517, courts should be guided by principles of comity and cooperation with foreign courts.  11 U.S.C. § 1509(b)(3); In re Metcalfe & Mansfield Alternative Investments, 421 B.R. 685, 696-97 (Bankr. S.D.N.Y. 2010); In re Atlas Shipping, 404 B.R. at 738; see also In re Fairfield Sentry Ltd. Lit., 458 B.R. 665, 679 (S.D.N.Y. 2011) ("The purpose

[of chapter 15] is to maximize assistance to the foreign court conducting the main proceeding.")
(citation omitted).

31.     In fact, as Judge Sweet recognized, post-recognition, "it is *mandatory* that U.S.
courts extend comity to a foreign representative's request for a grant of comity unless granting
such request would contravene U.S. public policy."  CT Investment Management Co., LLC v.
Carbonell, 2012 WL 92359 at *4 (emphasis added); see In re Qimonda AG Bankruptcy Lit., 433
B.R. 547, 565 (E.D. Va. 2010) (recognizing that §§ 1509(b)(3) and 1506, read in pari materia,
provide that comity *shall be granted* following the U.S. recognition of a foreign proceeding
under Chapter 15, subject to the caveat that comity shall not be granted when doing so would
contravene fundamental U.S. public policy") (emphasis added); In re Metcalfe, 421 B.R. at 696
("Section 1509 of the Bankruptcy Code *requires* that if the court grants recognition under §
1517, it 'shall grant comity or cooperation to the foreign representative.'") (emphasis added); see
also In re Condor Ins. Ltd., 601 F.3d 319, 324 (5th Cir. 2010) ("U. S. courts *must* grant comity
and cooperation to the foreign representative") (citations omitted) (emphasis added).

32.     Moreover, the public policy exception to the mandated extension of comity is to
be narrowly construed.  See In re Metcalfe, 421 B.R. at 698 (holding that extending comity to
Canadian orders granting third-party releases, although questionably contrary to U.S. bankruptcy
law, was not precluded by the section 1506 public policy exception); In re Ephedra Prods. Liab.
Litig., 349 B.R. 333, 334-35 (S.D.N.Y. 2006) (recognizing and enforcing Ontario court order
authorizing claims resolution procedure that arguably deprived parties of constitutional right to
jury trial based on narrow interpretation of § 1506's public policy exception).

NYI-4423270v4

**B.     As Judge Sweet Has Already Recognized, Comity Should Be Extended To The May 27th Order**

33.     In granting comity to the May 27th Order and staying the District Court Action, Judge Sweet evaluated the very same issue this Motion presents.  Judge Sweet first reviewed the substance and effect of the May 27th Order, along with CT Investment's multiple challenges to that order in the Mexican courts, and concluded that the May 27th Order is final and non-appealable and that the preventive measures included therein are valid and currently effect.  CT Investment Management Co., LLC v. Carbonell, 2012 WL 92359 at *4.[6]

34.     Judge Sweet fully considered whether the provision of the May 27th Order that stayed actions against non-debtors with respect to the guaranty agreements contravened U.S. public policy.  Finding it did not, Judge Sweet reasoned that a stay by a bankruptcy court of actions against non-debtor parties is completely consistent with U.S. bankruptcy law as "U.S. bankruptcy courts have, as the May 27th Order does, suspended actions against non-debtor parties order to assist in, and maintain the integrity of, the administration of a debtor's bankruptcy case." Id. at *5 (citing Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 443 B.R. 295, 316-17 (Bankr. S.D.N.Y. 2011) (extending stay to third party actions against non-debtor entities); Robert Plan Corp. v. Liberty Mut. Ins. Co., No. 09-1930, Bankr. Case No. 09-08027, 2010 WL 1193151, at *3-*4 (Bankr. E.D.N.Y. March 23, 2010) (extending stay to action against non-debtor officers where debtor-corporation would be liable to indemnify non-debtor officers); In re Calpine Corp., 365 B.R. 401, 409 n.20 (S.D.N.Y. 2007) (extending stay to non-debtor parties on grounds that claims against non-debtors would have immediate adverse

---

[6]     Although not explicitly discussed in the District Court Judgment, it is implicit that CT Investment's exhaustion of the appeals process, and all ancillary processes, with respect to the validity and effect of the May 27th Order in the Mexican courts satisfies any reasonable notion of fairness of process.  In re Metcalfe, 421 B.R. at 697 ("The key determination required by this Court is whether the procedures used in Canada meet our fundamental standards of fairness.").

economic consequence for debtor's estate); <u>In re United Health Care Org.</u>, 210 B.R. 228, 232-35

(S.D.N.Y. 1997) (staying actions against two non-debtor defendants where debtor corporation's

successful reorganization was contingent upon contribution of defendants' personal assets and

efforts); <u>In re North Star Contracting Corp.</u>, 125 B.R. 368, 370-71 (S.D.N.Y. 1991) (staying

actions against non-debtor president of debtor corporation); <u>see also</u> <u>Queenie, Ltd. v. Nygard</u>,

321 F.3d 282, 288 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally

does so only when a claim against the non-debtor will have an immediate adverse economic

consequence for the debtor's estate.")).

35.     In addition, Judge Sweet noted that "the laws of Mexico and the United States

need not be identical for extension of comity to be appropriate." <u>Id.</u> (citing <u>In re Metcalfe &</u>

<u>Mansfield Alternat Invs.</u>, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (relief granted in foreign

bankruptcy proceeding and relief available in U.S. proceeding need not be identical)).  "A U.S.

bankruptcy court is not required to make an independent determination about the propriety of

individual acts of a foreign court." <u>In re Metcalfe</u>, 421 B.R. at 697.

36.     The same principles apply here.  As part of its effort to successfully reorganize,

Cozumel Caribe sought and obtained from the Mexican District Court a stay with respect to the

monies in the Dollars Lockbox Account pending the outcome of the Mexican Bankruptcy

Proceeding.  While, to be sure, the Dollars Lockbox Account contains some non-debtor funds,

the Mexican District Court determined that the preventive measures in the May 27th

Order — including staying any efforts to transfer, or to apply against any outstanding

indebtedness, funds in to the Dollars Lockbox Account — are necessary to the Mexican

Bankruptcy Proceeding and the administration of Cozumel Caribe's estate.  That determination

arose from a careful review of the nature of Cozumel Caribe's business, and the

interrelationships between that business and the businesses of the other Companies.

37.     Nothing that the Mexican District Court did is inconsistent with how the U.S.

Bankruptcy Code might be applied in a similar case in this country.  See Global Safety Textiles

LLC v. Ares Euro CLO I B.V. (In re Global Safety Textiles), Bankr. No. 09-12234, Adv. Pro.

No. 09-51156 at Docket Nos. 2, 3, 9, 75 (extending stay to protect non-debtor foreign subsidiary

through effective date of debtors' plan because debtors and relevant non-debtors comprised an

integrated business); In re Cardinal Indus., Inc., 109 B.R. 748, 752 (Bankr. S.D. Ohio 1989)

(extending stay to protect property of non-debtor affiliates against creditor's foreclosure action

based on reasoning that bankruptcy court could extend the stay to enjoin actions against non-

debtor property where such "actions seriously impair a debtor's reorganizational efforts or so

disrupt its operations that reorganization efforts cannot be meaningful.").  And even were it

otherwise, that alone would not be enough to establish that the May 27th Order violates U.S

public policy (any more than was the case with respect to the Canadian order that granted third-

party releases in In re Metcalfe).

### C.   To The Extent It Has Not Been Supplanted By The Enactment Of Chapter 15, Altos Hornos Supports Extending Comity Here

38.     The Second Circuit's decision in JP Morgan Chase Bank v. Altos Hornos de

Mexico, S.A. de C.V., 412 F.3d 418 (2d Cir 2005), which addresses comity issues in connection

with a Mexican bankruptcy proceeding, bears some discussion.  In Altos Hornos, a Mexican

steel manufacturer sought bankruptcy protection in Mexico.[7]  JP Morgan, a prepetition lender,

filed a complaint in the Southern District of New York seeking a declaratory judgment that funds

---

[7]     Prior to the enactment of the Mexican Business Reorganization Act, a company seeking protection from its creditors filed for *suspension de pagos* in a Mexican civil court.

held in a domestic collection account that it managed for loan payments belonged to it and not

Altos Hornos.  Altos Hornos, 412 F.3d at 419-20.  The district court granted Altos Hornos'

motion to dismiss the complaint on grounds of international comity, and the Second Circuit

affirmed.

39.      As a threshold matter, Altos Hornos was decided prior to the enactment of

chapter 15 of the Bankruptcy Code, at a time when the question whether to extend comity to a

foreign proceeding was a matter of general comity jurisprudence and within a court's sound

discretion.  Indeed, the Altos Hornos court itself characterized the issue as involving "the

discretion of a national court to decline to exercise jurisdiction," and evaluated the lower court's

decision under an "abuse of discretion" standard.  Altos Hornos, 412 F.3d at 422, 424.  Of

course, as discussed above, section 1509(b)(3) of the Bankruptcy Code now *mandates* that, once

a foreign proceeding has been recognized, comity with respect to that proceeding *must be*

*extended*.  Under chapter 15, the only exception to that mandate is when extending comity would

be manifestly contrary to U.S public policy.  Thus, to the extent  Altos Hornos discusses other

situations in which a court could decline to extend comity, it has been supplanted by

section 1509(b)(3).

40.      But even if Altos Hornos remained good law for purposes here, it would only

further support the extension of comity to the May 27th Order.  Indeed, the Second Circuit began

its analysis in that case by noting that it had "repeatedly held that U.S. courts should ordinarily

decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding."

Altos Hornos, 412 F.3d at 424.  The court then went on to discuss a "limited exception" to this

rule that it had recognized in Koreag, Controle et Revision S.S. v. Refco F/X Assocs., Inc. (In re

Koreag), 961 F.2d 341 (2d Cir. 1992).  In that case, the Court had concluded in the context of a

- 15 -

turnover action under former section 304(b)(2) that the question of **who owns** property a foreign

debtor claims as part of its estate in a foreign bankruptcy proceeding is a question "antecedent to

the distributive rules of bankruptcy" that may be resolved by local courts "because international

comity does not require deference to the parallel foreign bankruptcy proceeding in such

circumstances." Id. at 349.

41.     The Altos Hornos court clarified that the "Koreag exception" applies only to

"disputes presenting a *bona fide* question of ownership," and has no application where a

bankruptcy creditor "has a contractual obligation to the use the assets to pay down the same debt

that is the subject of a foreign bankruptcy proceeding." Altos Hornos, 412 F.3d at 420 (citing In

re Koreag) (emphasis in original).  The Second Circuit went on to state that in a case where the

creditor is really seeking payment on a debt that is the subject of a parallel foreign bankruptcy

proceeding, "local courts are displaced and must defer to the foreign proceeding." Id. at 420,

427-28.  Finding that JP Morgan's ownership claim was "simply a creditor's thinly veiled

attempt to extract partial payment from the debtor on the debt owed outside a foreign bankruptcy

proceeding," the Second Circuit refused to apply the Koreag exception and dismissed JP

Morgan's complaint on comity grounds.  Id. at 427.

42.     Likewise, here there is no "bona fide dispute" regarding ownership of the funds in

the Dollars Lockbox Account.  All parties acknowledge that the Dollars Lockbox Account

includes funds from the operations of Cozumel Caribe, along with the operations of the other

Companies.  And although Cozumel Caribe is not at this time taking a position on CT

Investment's accounting with respect to the Dollars Lockbox Account, it nonetheless has no

reason to believe the parties will have any major disagreements in that regard.  So there is no

ownership dispute here.

43.     What is in dispute is whether, notwithstanding the express provisions of the May

27th Order, CT Investment should be permitted to take funds out of the Dollars Lockbox

Account and apply them against the indebtedness that is the basis for its claim in the Mexican

Bankruptcy Proceeding.  Indeed, the relief CT Investment seeks here is nothing more than an

attempt to secure payment from the Dollars Lockbox Account on the debt arising under the Loan

Documents.  But that is precisely the type of claim the Second Circuit in Altos Hornos held that

JP Morgan could **not** assert in deference to the Mexican bankruptcy proceeding.  Id.

44.     In short, section 1509(b)(3)'s statutory mandate aside, Altos Hornos and In re

Koreag likewise support the view that this Court should allow the Mexican District Court to

adjudicate all issues regarding the creditors' claims that are being asserted in the Mexican

Bankruptcy Proceeding.

**CONCLUSION**

45.     With the enactment of chapter 15, the question whether a United States court

should extend comity to an order entered in a foreign bankruptcy proceeding that has been

recognized under section 1517 is no longer a matter of judicial discretion.  Unless doing so

would violate U.S. public policy, the extension of comity is mandatory.  The Mexican District

Court's May 27th Order by its express terms bars any attempt to get at the funds in the Dollars

Lockbox Account – the very thing CT Investment seeks to do by this action.  As Judge Sweet

concluded in the District Court Comity Decision, this Court must therefore extend comity to that

order and stay this case pending resolution of the Mexican Bankruptcy Proceeding.

**RESERVATION OF RIGHTS**

46.     The Foreign Representative expressly reserves its rights to supplement and amend

this Motion, seek discovery with respect to same, and introduce evidence at any hearing relating

to the Complaint or this Motion.

WHEREFORE, the Foreign Representative respectfully requests that the Court (i) enter an order, substantially in the form attached hereto as Exhibit A granting the Motion and staying this action, and (ii) grant the Foreign Representative such other and further relief as the Court deems proper.

Dated:  January 23, 2012
      New York, New York

Respectfully submitted,

 /s/  Pedro A. Jimenez
Pedro A. Jimenez
Jennifer J. O'Neil
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Todd Swatsler
JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio  43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198

*Attorneys for the Foreign Representative*

NYI-4423270v4

## EXHIBIT A

**Form of Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 15
                                                    :
COZUMEL CARIBE, S.A. de C.V.,                       :    Case No. 10-13913 (MG)
                                                    :
        Debtor in a Foreign Proceeding              :
                                                    :
---------------------------------------------------------------x
                                                    :
CT INVESTMENT MANAGEMENT CO., LLC,                  :
                                                    :
            Plaintiff,                              :    Adversary Proceeding No. 11-02936
                                                    :    (MG)
        v.                                          :
                                                    :
COZUMEL CARIBE, S.A. de C.V.,                       :
                                                    :
            Defendant.                              :
                                                    :
---------------------------------------------------------------x

## ORDER STAYING ACTION FOR DECLARATORY
## JUDGMENT FILED BY CT INVESTMENT MANAGEMENT CO., LLC

Upon the Motion for Entry of Order Extending Comity and Staying the Adversary

Proceeding for Declaratory Judgment filed by CT Investment Management Co., LLC

(the "Motion")[1] filed by the Foreign Representative in the above-captioned adversary proceeding;

the Court having reviewed the Motion and the Herrera Declaration, and having heard the

statements regarding the relief requested in the Motion at a hearing held before the Court

(the "Hearing"); and the Court having determined that the legal and factual bases set forth in the

Motion, the Herrera Declaration and at the Hearing establish just cause for the relief granted

herein;

---

[1]        Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    This Adversary Proceeding is hereby STAYED pending the conclusion of

the Mexican Bankruptcy Proceeding of Cozumel Caribe.

3.    The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation or enforcement of this Order.


Dated: New York, New York
_____, 2012        _____

                             HONORABLE MARTIN GLENN
                             UNITED STATES BANKRUPTCY JUDGE

NYI-4423270v4

**<u>EXHIBIT B</u>**

**District Court Opinion**

Westlaw.

Page 1

Slip Copy, 2012 WL 92359 (S.D.N.Y.)
**(Cite as: 2012 WL 92359 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
CT INVESTMENT MANAGEMENT CO., LLC,
solely in its capacity as special servicer and attor-
ney-in-fact for Bank of America, National Association,
as successor by merger to Lasalle Bank National As-
sociation, as trustee for the Noteholders, Plaintiff,
v.
Pablo Gonzalez CARBONELL and Grupo Costamex,
S.A. de C.V, Defendants.

No. 10 Civ. 6872.
Jan. 11, 2012.

Sidley Austin LLP, by: Nicholas P. Crowell, Esq.,
Martin B. Jackson, Esq., Vijay Dewan, Esq., New
York, NY, for Plaintiff.

Jones Day, by: Pedro A. Jimenez, Esq., Jennifer J.
O'Neil, Esq., New York, NY, by: Todd Swatsler, Esq.,
Columbus, OH, for the Foreign Representative.

*OPINION*
SWEET, District Judge.
   *1 On September 13, 2010, plaintiff CT Invest-
ment Management Co., LLC, in its capacity as special
servicer and attorney-in-fact for Bank of America,
National Association, as successor by merger to La-
Salle Bank National Association, as trustee for the
Noteholders ("Plaintiff" or "CT Investment") com-
menced the instant action against defendants Pablo
Gonzalez Carbonell and Grupo Costamex, S.A. de
C.V. (together, "Defendants") alleging breach of
contract under a guaranty agreement (the "Agree-
ment") entered into in connection with the develop-
ment and operation of several resort properties and
hotels in Mexico. Plaintiff alleges that the Defendants'
obligations under the Agreement were triggered when,
on or about April 27, 2010, Cozumel Caribe S.A. de
C.V. ("Cozumel Caribe"), a subsidiary of defendant
Grupo Costamex, commenced a concurso mercantil,
or voluntary bankruptcy, proceeding in Mexico.

   On May 13, 2011, Plaintiff filed a motion for en-
try of default judgment. Following the submission of

several letters to the Court, on July 26, 2011, Nemias
Esteban Martinez Martinez (the "Foreign Represent-
ative" or "Martinez"), in his capacity as the foreign
representative in Cozumel Caribe's Chapter 15 bank-
ruptcy case in the United States, filed a motion for the
extension of comity to a certain order issued by the
Third District Court for the State of Quintana Roo (the
"Mexican District Court") on May 27, 2010 (the "May
27th Order") and to stay the above-captioned case
pending the conclusion of Cozumel Caribe's bank-
ruptcy proceeding in Mexico.

   For the reasons stated below, comity is extended
to the May 27th Order and the Foreign Representa-
tive's motion for a stay is granted.

***Prior Proceedings***
   On April 27, 2010, Cozumel Caribe initiated a
voluntary insolvency proceeding (the "Mexican
Bankruptcy Proceeding") pursuant to the provisions of
the Ley de Concursos Mercantiles (the "Mexican
Business Reorganization Act") in the Mexican District
Court. As part of its petition under the Mexican
Business Reorganization Act, Cozumel Caribe sought
entry of an order approving certain measures to protect
it as well as certain other parties. On May 27, 2010,
the Mexican District Court approved Cozumel Ca-
ribe's application and entered the May 27th Order.

   On June 22, 2010, the Director General of Mex-
ico's Federal Institute of Business Reorganization
Specialists appointed the Foreign Representative as
the visitador of Cozumel Caribe, and that appointment
was later elevated to the title of conciliador by the
Mexican District Court.

   In addition, on July 20, 2010, the Foreign Rep-
resentative filed a petition under Chapter 15 of Title
11 of the United States Code (the "Bankruptcy Code")
on behalf of Cozumel Caribe with the United States
Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court"). On October 20, 2010,
the Bankruptcy Court entered its Order Granting
Recognition of Foreign Representative and Foreign
Main Proceeding and for Additional Relief under 11
U.S.C. § 1521 (the "Recognition Order") pursuant to
which the U.S. Bankruptcy Court granted recognition
to the Mexican Bankruptcy Proceeding and the For-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 92359 (S.D.N.Y.)
**(Cite as: 2012 WL 92359 (S.D.N.Y.))**

eign Representative.

**\*2** On August 12, 2010, CT Investment sought an appeal of the May 27th Order by filing a claim with the Second District Judge of the City of Cancun (the "Cancun District Court") and sought temporary and immediate suspension of the May 27th Order. On August 13, 2010, the Cancun District Court denied that request. Following the August 13, 2010 denial, CT Investment filed an appeal with the Second Associate Court of the Twenty–Seventh Circuit in Mexico (the "Mexican Appellate Court"), seeking review of the Cancun District Court's denial. On August 23, 2010, the Mexican Appellate Court denied that appeal. Following Mexican Appellate Court's decision, the Cancun District Court held a hearing on August 31, 2010 on CT Investment's application to temporarily suspend the May 27th Order. On September 7, 2010, the Cancun District Court denied that request.

On September 13, 2010, Plaintiff filed the instant complaint seeking to enforce the Agreement.

On September 30, 2010, the Mexican District Court issued its business reorganization judgment granting Cozumel Caribe's bankruptcy petition. On December 9, 2010, the Second Collegiate Court of Cancun, Quintana Roo denied CT Investment's appeal and dismissed the proceeding Plaintiff had initiated with the Cancun District Court.

On May 13, 2011, Plaintiff filed a motion for entry of default judgment. On July 26, 2011, the Foreign Representative filed the instant motion for the extension of comity for a stay pending the conclusion of Cozumel Caribe's bankruptcy proceeding in Mexico.

***Comity is Extended and a Stay is Granted***

**A. The Foreign Representative Has Standing**

Martinez asserts that he has standing to seek comity and a stay pursuant to Section 1509(b) of the Bankruptcy Code, which provides:

If the [U.S. bankruptcy] court grants recognition [to a foreign bankruptcy proceeding] under section 1517 [of the U.S. Bankruptcy Code], and subject to any limitations that the [U.S. bankruptcy] court may impose consistent with the policy of this chapter—

(1) the foreign representative has the capacity to sue and be sued in a court in the United States;

(2) the foreign representative may apply directly to a court in the United States for appropriate relief in that court; and

(3) a court in the United States shall grant comity or cooperation to the foreign representative.

11 U.S.C. § 1509(b).

At the threshold, CT Investment argues that the stay and comity motion should be denied because Martinez lacks standing for the reason that neither Cozumel Caribe nor Martinez is a party to this action or has otherwise sought to properly intervene. Plaintiff points to Section 1524 of the Bankruptcy Code, which provides that "[u]pon recognition of a foreign proceeding, the foreign representative may intervene in any proceedings in a State or Federal court in the United States in which the debtor is a party." 11 U.S.C. § 1524. In Plaintiff's view, Section 1524 limits the right of the foreign representative to intervene to proceedings "in which the debtor is a party." 11 U.S.C. § 1524. That is, Plaintiff argues that the Foreign Representative may seek relief under section 1509(b) only to the extent that he has a right to intervene under Section 1524. However, no part of Section 1509(b) suggests that Congress intended the ability of a foreign representative "to apply directly to a court ... for appropriate relief," 11 U.S.C. § 1509(b)(2), following a U.S. bankruptcy court's recognition of a foreign bankruptcy proceeding to be limited to cases in which the Chapter 15 debtor is a party. CT Investment has offered no case or legislative history supporting the proposition that Section 1524 was intended to limit Section 1509(b) in such a way or affect its mandate that "a court in the United States shall grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3). Instead, the plain language of Sections 1509 and 1524 indicates that they are separate grants of authority, and it is well settled that

**\*3** Section 1509 of the Code erects a structure in which the foreign representative passes through the bankruptcy court for a recognition decision, the specified consequences of which are that the foreign representative gains the capacity to sue and be sued in United States courts and the authority to apply

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 92359 (S.D.N.Y.)
**(Cite as: 2012 WL 92359 (S.D.N.Y.))**

directly to a court in the United States for appropriate relief, and that all courts in the United States must grant comity or cooperation to the foreign representative.

> *In re Basis Yield Alpha Fund (Master),* 381 B.R. 37, 44–45 (Bankr.S.D.N.Y.2008).

In addition, CT Investment contends that Section 1509 does not permit a foreign representative to "apply directly to a court in the United States for appropriate relief in that court," 11 U.S.C. § 1509(b)(2), without otherwise observing applicable U.S. law and the Federal Rules of Civil Procedure, namely Rule 24's requirements for intervention. Specifically, Plaintiff relies on the text of Section 1509(e), which provides in relevant part that "[w]hether or not the court grants recognition ... a foreign representative is subject to applicable nonbankruptcy law." 11 U.S.C. § 1509(e). Accordingly, in Plaintiff's view, while Section 1509(b) allows a foreign representative to seek appropriate relief from any U.S. court, Martinez is required to intervene by motion and meet the standard of Rule 24.

However, "[t]he legislative history of the Chapter states that [Section 1509(e) ] is intended to function identically to the manner which 28 U.S.C. § 959 affects domestic trustees ...." *In re Loy,* 380 B.R. 154, 165 n. 2 (Bankr.E.D.Va.2007) (citing H. Rep. 109–31(I) at 109 (2005), *as reprinted* in 2005 U.S.C.C.A.N. 88, 172 ("Subsection (e) makes activities in the United States by a foreign representative subject to applicable United States law, just as 28 U.S.C. § 959 does for a domestic trustee in bankruptcy.")); 28 U.S.C. § 959 (2007)). 28 U.S.C. § 959 provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." Section 1509 was thus intended to subject foreign representatives to suit with respect to their acts in their capacity as such under applicable nonbankruptcy law, regardless of whether a U.S. Bankruptcy Court had previously granted recognition, not to limit the effect of Section 1509(b)(2), which by its plain terms permits a foreign representative to "apply directly to a court in the United States for appropriate relief in that court." 11 U.S.C. § 1509(b)(2).

This Court will "assume that 'Congress says in a statute what it means and means in a statute what it says,' " and finds that under Section 1509(b)(2), Martinez properly has standing to seek comity and a stay. *In re Fairfield Sentry Ltd.,* 452 B.R. 52, 58 (Bankr.S.D.N.Y.2011) (quoting *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz),* 315 F.3d 80, 89 (2d Cir.2002)); *see also Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.") (citations and quotation marks omitted); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in interpreting the Bankruptcy Code finding that plain meaning of legislation should be conclusive, except in rare cases where literal application of statute would present a result demonstrably at odds with intentions of its drafters).

**C. The May 27th Order Requires a Stay**

**\*4** The May 27th Order grants a number of preventative measures "in order to protect the interests of the presumably bankrupted company, of the borrowers and the company's assets, as well as in order to favor its existence." (Decl. of Raul Garcia Herrera of July 26, 2011, Ex. A, Dkt. No. 20–3 at 3.) Specifically, Subsection (e) of the May 27th Order provides that "[t]he execution of additional guarantees established in the Guarantee Agreement in case of bankruptcy is suspended, whose responsibility of its credits is trying to be extended to the principal's shareholders (Pablo Ignacio Gonzalez Carbonell) by reason of the bankruptcy request (Paragraph two of Article 26, section II of Article 37 of the Bankruptcy Act)." (*Id.* at 4.) Thus, by its plain terms, the May 27th Order suspends the execution of the guarantees established in the Agreement.

Relying on the Mexican Appellate Court's Order of August 23, 2010, Plaintiff argues that the May 27th Order does not require a stay of the instant action. However, the August 23, 2010 Mexican Appellate Court Order does not speak to Subsection (e) of the May 27th Order, which addresses the suspension of the execution of the guarantees in the Agreement that are triggered by Cozumel Caribe's bankruptcy, and, regardless, the August 23, 2011 Appellate Order was substituted and voided by the September 6, 2010 order of the Cancun District Court denying CT Investment's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 92359 (S.D.N.Y.)
**(Cite as: 2012 WL 92359 (S.D.N.Y.))**

request for the suspension of the May 27th Order. Moreover, the Mexican Appellate Court later denied CT Investment's appeal of that decision and, as a consequence, the May 27th Order became final and non-appealable.

Indeed, after the filing of the August 23 Appellate Order that CT Investment asserts modified the May 27th Order, the Mexican District Court ordered the issuance of letters rogatory to inform this Court of the May 27th Order and "the effectiveness of the preventive measures established" therein. (Decl. of Raul Garcia Herrera of July 26, 2011, Ex. B, Dkt. No. 20–4 at 8.)

**D. Extension of Comity to the May 27th Order is Mandatory and Not Contrary to the Public Policy of the United States**

Once a foreign proceeding has been recognized by a U.S. bankruptcy court, it is mandatory that U.S. courts extend comity to a foreign representative's request for a grant of comity unless granting such request would contravene U.S. public policy:

Section 1509 states, in mandatory terms, that "a court in the United States *shall* grant comity or cooperation to the foreign representative." As the Fourth Circuit has explained, in interpreting federal statutes the word "may" evidences "a congressional intent to grant courts ... discretion," in contrast to the word "shall," which connotes that "Congress clearly did not manifest an intent to confer such discretion." Thus, under the plain terms of § 1509(b)(3), the Bankruptcy Court lacked general discretion to deny the Foreign Administrator's request for comity; rather, the Bankruptcy Court could only have refused to defer to German Insolvency Code § 103 on the ground that applying German law, instead of § 365(n), would be "manifestly contrary to the public policy of the United States" under § 1506. Put another way, §§ 1509(b)(3) and 1506, read in *pari materia,* provide that comity shall be granted following the U.S. recognition of a foreign proceeding under Chapter 15, subject to the caveat that comity shall not be granted when doing so would contravene fundamental U.S. public policy. Accordingly, the analysis must focus sharply on whether § 365(n) embodies the fundamental public policy of the United States, such that subordinating § 365(n) to German Insolvency Code § 103 is an action "manifestly contrary to the public policy of the United

States."

**\*5** *In re Qimonda AG Bankruptcy Lit.,* 433 B.R. 547, 565 (E.D.Va.2010) (emphasis in original, citations omitted). As the F Circuit has described,

Chapter 15 functions through the recognition of a foreign proceeding. Only with recognition does broad relief become available: the representative is able to sue and be sued in U.S. courts, to apply directly to a U.S. court for relief, to commence a non-Chapter 15 case, to intervene in any U.S. case in which the debtor is a party, and U.S. courts must grant comity and cooperation to the foreign representative.

*In re Condor Ins. Ltd.,* 601 F.3d 319, 324 (5th Cir.2010) (citations omitted).

Here, comity must be extended because the May 27th Order is not manifestly contrary to the public policy of the United States. Plaintiff argues that a stay and extension of comity to the May 27th Order would conflict with principles of U.S. bankruptcy law, under which "extension of a stay to a non-debtor only arises when there is such identity between the debtor and [non-debtor] that the debtor may be said to be the real party defendant and that a judgment against the [non-debtor] will in effect be a judgment ... against the debtor." *Gray v. Hirsch,* 230 B.R. 239, 242 (S.D.N.Y.1999) (citation and quotation marks omitted). However, the laws of Mexico and the United states need not be identical for extension of comity to be appropriate. *See In re Metcalfe & Mansfield Alternative Invs.,* 421 B.R. 685 (Bankr.S.D.N.Y.2010). As Plaintiff recognizes, U.S. bankruptcy courts have, as the May 27th Order does, suspended actions against non-debtor parties in order to assist in, and maintain the integrity of, the administration of a debtor's bankruptcy case. *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 443 B.R. 295, 316–17 (Bankr.S.D.N.Y.2011) (extending stay to third-party actions against non-debtor entities); *Robert Plan Corp. v. Liberty Mut. Ins. Co.,* No. 09–1930, Bankr.Case No. 09–08027, 2010 WL 1193151, at *3–*4 (Bankr.E.D.N.Y. March 23, 2010) (extending stay to action against non-debtor officers where debtor-corporation would be liable to indemnify non-debtor officers); *In re Calpine Corp.,* 365 B.R. 401, 409 n. 20 (S.D.N.Y.2007) (extending stay to non-debtor parties on grounds that claims against non-debtors would have immediate adverse economic

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 92359 (S.D.N.Y.)
**(Cite as: 2012 WL 92359 (S.D.N.Y.))**

consequence for debtor's estate); *In re United Health Care Org.,* 210 B.R. 228, 232–35 (S.D.N.Y.1997) (staying actions against two non-debtor defendants where debtor corporation's successful reorganization was contingent upon contribution of defendants' personal assets and efforts); *In re North Star Contracting Corp.,* 125 B.R. 368, 370–71 (S.D.N.Y.1991) (staying actions against non-debtor president of debtor corporation); *see also Queenie, Ltd. v. Nygard,* 321 F.3d 282, 288 (2d Cir.2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.").

**\*6** While Plaintiff is correct that the United States has an strong interest in the continuing enforceability of foreign debts owed to United States lenders, extension of comity to the May 27th Order does not abrogate that interest.

A stay of this action pending the conclusion of the Mexican Bankruptcy Proceeding will not prejudice the parties or administration of this case, which is in its early stages prior to discovery or the filing of an answer or responsive pleading.

Extension of comity is therefore mandated by Section 1509(b) of the Bankruptcy Code.

***Conclusion***

For the reasons set forth above, comity is extended to the May 27th Order and a stay is granted.

It is so ordered.

S.D.N.Y.,2012.
CT Inv. Management Co., LLC v. Carbonell
Slip Copy, 2012 WL 92359 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.